

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **MATTHEW BREWER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 3:20-CV-01427-CLS** |
| | ) | |
| **FREIGHTCAR ALABAMA, LLC,** | ) | |
| **and METLIFE GROUP, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Whenever, during the first three years that Matthew Brewer was employed by FreightCar Alabama, LLC, he or other employees sought benefits under the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 ("FMLA"), or the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), they submitted their claims to the employer's Human Resources Department.   In January of 2018, however, FreightCar Alabama contracted with Metropolitan Life Insurance Company ("MetLife")[1] to evaluate and manage claims for those benefits.   Thereafter, MetLife denied a number of Brewer's claims, and FreightCar Alabama ultimately terminated him for accumulating too many unexcused absences.   Brewer sued FreightCar Alabama for interference with, and retaliation for the exercise of, his FMLA and

---

[1] Plaintiff's complaint incorrectly names defendant Metropolitan Life Insurance Company as "MetLife Group, Inc."  *See* doc. no. 12 (MetLife Motion to Dismiss), at 1.

ADA rights.  Doc. no. 1 (Complaint), ¶¶ 137–66 (Counts I, II, and III).  His complaint also alleges under the supplemental jurisdiction statute[2] two state-law claims against MetLife for intentional (tortious) interference with a contractual or business relationship.[3]  *Id*. §§ 167–98 (Counts IV and V).  This opinion addresses MetLife's motion to dismiss those claims (doc. no. 12).

## I.  STANDARDS OF REVIEW

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] Doc. no. 1 (Compliant), ¶ 5 ("The Court also has supplemental jurisdiction over the state claims asserted herein pursuant to 28 U.S.C. § 1367.").  That statute allows federal courts to adjudicate claims that are based upon state law when the federal and state claims arise out of "a common nucleus of operative fact."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

[3] These are separate torts under Alabama law (*see White Sands Group, LLC v. PRS II, LLC*, 998 So. 2d 1042, 1054 (Ala. 2008) ("It is widely recognized that tortious interference with a contractual relationship is a claim separate and distinct from interference with a business relationship or expectancy."), and plaintiff plead them as such in Counts IV and V of his complaint.

(2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S. at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).

> Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a compliant is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 409 F.3d at 157–58.  But where

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678–79 (emphasis supplied, second and fourth alterations in original, other alteration supplied).

## II. PLAINTIFF'S ALLEGATIONS

When Matthew Brewer began his employment as a "Level 3 production welder" for FreightCar Alabama on October 26, 2014,[4] he already suffered from brittle, type-1 diabetes.[5] FreightCar Alabama was aware of Brewer's condition when he was hired.[6]

---

[4] Doc. no. 1 (Complaint), ¶ 21.

[5] *Id.* ¶ 30. "Type-1 diabetes" is also known as insulin dependent diabetes mellitus, which "usually starts before 15 years of age, but can occur in adults also. Diabetes involves the pancreas gland, which is located behind the stomach. The special cells (beta cells) of the pancreas produce a hormone called insulin." Diabetes: Insulin Dependent Diabetes Mellitus (Type I), https://www.nationwidechildrens.org/conditions/diabetes-insulin-dependent-diabetes-mellitus-type-i. "Brittle" is a term used by physicians to describe type-1 diabetic conditions that are unstable and difficult to control. *See, e.g.*, Brittle Diabetes, The London Diabetes Centre, https://londondiabetes.com/type-1/brittle-diabetes/; What Is Brittle Diabetes?, WebMD, https://www.webmd.com/diabetes/brittle-diabetes-all-about.

[6] Doc. no. 1 (Complaint), ¶ 30.

4

While working during November of 2014, the month after he was hired, Brewer suffered a diabetic stroke.[7]  He was off work for two weeks, recovering from the stroke, attending doctor's appointments, and participating in speech and physical therapy sessions.[8]

In December of 2014, the month following Brewer's stroke and full-time return to the production floor, he began to suffer additional complications, including frequent headaches, pain, and fatigue.[9]  He notified his supervisors about his need for additional breaks, time-off for doctor's appointments and blood glucose checks, and submitted copies of relevant medical documents to the company.[10]  He was allowed intermittent FMLA leave and work-place accommodations.[11]

Nearly three years later, in August of 2017, Brewer was diagnosed with Rocky Mountain Spotted Fever, "a bacterial disease spread through the bite of an infected tick."[12]  He was off work through the end of September 2017, recovering from the fever, but the disease also caused long-lasting complications with his diabetic condition.[13]  He continued to use intermittent FMLA leave to care for his medical

---

[7] *Id.* ¶¶ 32–33.

[8] *Id.* ¶ 34–35.

[9] *Id.* ¶¶ 36, 38.

[10] *Id.* ¶¶ 37, 39.

[11] *Id.* ¶¶ 39, 46.

[12] Doc. no. 1 (Complaint), ¶ 42.

[13] *Id.* ¶¶ 43–44.

needs.[14]

In January of the following year, 2018, FreightCar Alabama ceased to administer in-house claims for FMLA and ADA benefits submitted by its employees, and contracted with MetLife to evaluate and manage such claims.[15] Brewer learned of the change during February of 2018, when he requested additional intermittent FMLA leave and was told to submit his paperwork to the company's new third-party administrator.[16]

Brewer submitted his leave request to MetLife on February 26, 2018, and listed his underlying medical conditions as type-1 diabetes, diabetic stroke, and Rocky Mountain Spotted Fever.[17] MetLife denied the request.[18] Brewer continued to submit requests for intermittent FMLA leave and ADA accommodations throughout the following month of March 2018, but was told by both MetLife and his employer's Human Resources Department that he did not qualify for FMLA leave or ADA accommodations.[19]

---

[14] *Id.* ¶ 46.

[15] *Id.* ¶¶ 47–48.

[16] *Id.* ¶¶ 49–50.

[17] *Id.* ¶¶ 52–53.

[18] Doc. no. 1 (Complaint), ¶ 54.

[19] *Id.* ¶¶ 55–57. *See also id.* ¶¶ 58–63 (alleging that Brewer's wife "contacted Metlife [*sic*] and FCA [*FreightCar Alabama*] multiple times a week to see if any additional information needed to be submitted," attempted to enter the FCA facility to meet with the Director of Human Resources, "but was not allowed"; and, thereafter submitted facsimile copies of additional medical documents

Brewer met with Crystal Creel, FreightCar Alabama's Human Resources Director, during the month of April 2018, to discuss MetLife's denial of his intermittent FMLA leave requests.[20] He asked to submit his paperwork to FreightCar Alabama as he previously had done, but Ms. Creel denied his request, saying that he would have to deal directly with MetLife.[21]

Two months later, in June of 2018, Brewer experienced a flare-up of his Rocky Mountain Spotted Fever, which severely impacted his underlying diabetic condition.[22] He submitted requests for FMLA leave to both FreightCar Alabama and MetLife.[23] FreightCar Alabama required him to take medical leave without FMLA protection while it waited for MetLife to rule upon his FMLA request.[24] Brewer was on unprotected leave from June 1–29, 2018,[25] but MetLife subsequently approved Brewer's FMLA leave request for that period.[26]

Brewer returned to work on July 7, 2018,[27] and submitted requests for

---

to FreightCar Alabama, but the documents were ignored, and both MetLife and FreightCar Alabama "refused to offer any assistance").

[20] *Id.* ¶¶ 64–67.

[21] *Id.* ¶ 67.

[22] *Id.* ¶ 69.

[23] *Id.* ¶ 70.

[24] Doc. no. 1 (Complaint), ¶ 71.

[25] *Id.* ¶ 72.

[26] *Id.* ¶ 74 ("On July 6, 2018, Metlife approved Brewer's FMLA and STD [short-term disability] leave request for the period of June 1, 2018 - June 29, 2018.") (alteration supplied).

[27] *Id.* ¶ 75 ("On or about July 7, 2018, Brewer returned to FCA.").

physician-prescribed accommodations, including protective gear for his skin,[28] but the accommodations were denied.[29]  FreightCar Alabama also removed him from the full-time shift schedule, which caused his earnings to be less than his pre-leave pay.[30]

Four months later, on October 29, 2018, Brewer suffered a flare-up of his Rocky Mountain Spotted Fever, and his treating physician sent him to an endocrinologist because his pancreas was failing.[31]  The treating physician and endocrinologist ordered Brewer to take time off work the following month, to undergo treatment.[32]  Brewer immediately contacted his employer and MetLife to request FMLA leave and short-term disability coverage.[33]  MetLife approved Brewer's request for short-term disability, but denied his request for intermittent FMLA leave.[34]

Brewer was on medical leave from October 29 through November 30, 2018, and received short-term disability payments from MetLife during that period.[35] When

---

[28] Rocky Mountain Spotted Fever usually causes a severe rash.  *See* Signs and Symptoms, Rocky Mountain Spotted Fever (RMSF), Centers for Disease Control & Prevention, https://www.cdc.gov/rmsf/symptoms/index.html.

[29] Doc. no. 1 (Complaint), ¶¶ 73, 76–77, 84.

[30] *Id.* ¶¶ 79–82.

[31] *Id.* ¶¶ 85–86.

[32] *Id.* ¶ 87.

[33] *Id.* ¶¶ 88–89.

[34] *Id.* ¶ 93.

[35] Doc. no. 1 (Complaint), ¶ 94.

he visited his doctor for a final check-up on November 30, 2018, the doctor advised him to take off work for an additional four weeks, to undergo further treatment.[36] Brewer notified his employer that he needed additional short-term disability and intermittent FMLA leave from December 1, 2018 through January 7, 2019, and submitted the necessary paperwork to MetLife and FreightCar Alabama.[37]  The requests were denied.[38]  Brewer submitted additional requests for leave, but all were denied.[39]  He was absent from work, with no FMLA or short-term disability protection, until he returned to the production floor on January 7, 2019.[40]

Upon Brewer's return, he met with Human Resources Director Crystal Creel, who told him that his recent absences were unexcused.[41]  She also informed Brewer that, *unless* MetLife retroactively approved FMLA leave for his absences on appeal, he would be terminated for his unexcused absences.[42]  MetLife denied Brewer's appeal and, on February 1, 2019, FreightCar Alabama terminated him.[43]  This suit followed.

---

[36] *Id.* ¶ 97.

[37] *Id.* ¶¶ 98–99.

[38] *Id.* ¶ 100.

[39] *Id.* ¶¶ 101–06.

[40] *Id.* ¶ 107.

[41] Doc. no. 1 (Complaint), ¶¶ 108–11.

[42] *Id.* ¶ 112.

[43] *Id.* ¶¶ 118–19.

## III.  DISCUSSION

Plaintiff asserts two related, but distinct state-law tort claims against defendant MetLife:  intentional interference with a business relationship (Count IV); and, intentional interference with a contractual relationship (Count V).[44]

In his first claim (Count IV), plaintiff alleges that MetLife intentionally interfered with his employment relationship with FreightCar Alabama and his substantive FMLA rights by making unnecessary requests for additional medical paperwork, and denying his requests for FMLA leave, eventually resulting in FreightCar Alabama terminating his employment.[45]  There are five elements of a *prima facie* case for intentional interference with a *business* (employment) relationship:  *i.e.*, "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) *to which the defendant was a stranger*; (4) with which the defendant intentionally interfered; and (5) damage."  *White Sands Group, LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009) (emphasis supplied) ("*White Sands II* ").

In his second claim, plaintiff alleges the same facts, contending that those facts also support a claim for intentional interference with a *contractual* relationship

---

[44] As stated in note 3, *supra*, these are separate torts under Alabama law, and plaintiff pleads them as such in Counts IV and V of his complaint.  The torts will be interchangeably referred to in the following discussion as either "intentional interference" or "tortious interference."

[45] Doc. no. 1 (Complaint), ¶¶ 175–84.

(Count V).[46]  The elements of a *prima facie* case of intentional interference with a *contractual* relationship are virtually identical to the elements of the first claim, but "presuppose[] the existence of an enforceable contract.  Otherwise, the elements of both torts overlap."  *Hope for Families & Community Service, Inc. v. Warren*, 721 F. Supp. 2d 1079, 1177 (M.D. Ala. 2010) (alteration supplied, internal citation omitted). In other words, to state a claim for intentional interference with a *contractual* relationship the plaintiff must show:  (1) the existence of *an enforceable contract*; (2) of which the defendant had knowledge; (3) *to which the defendant was a stranger*; (4) with which the defendant intentionally interfered; and (5) damage.

MetLife argues that both claims should be dismissed for two reasons.  First, plaintiff failed to allege that he had an enforceable contract with FreightCar Alabama and, therefore, failed to state a claim for intentional interference with a *contractual* relationship.  Second, plaintiff failed to allege that MetLife was a "stranger" to his employment relationship with FreightCar Alabama and, for that reason, cannot state a claim for either tort.

## A.     Plaintiff's At-Will Employment Constitutes an Enforceable Contract

MetLife first argues that plaintiff has failed to state a claim for intentional interference with a contractual relationship (Count V) because the "at-will" nature of

---

[46] *Id.* ¶¶ 193–98.

the employment relationship between him and FreightCar Alabama does not constitute an enforceable contract.[47] To refute that argument, plaintiff relies upon the dissenting opinion in *Ex parte McNaughton*, 728 So. 2d 592 (Ala. 1998), in which Alabama Supreme Court Justice Cook observed that an at-will employment relationship, "despite its limitations, is nonetheless *contractual*. Employment contracts, particularly those which would be considered at-will, are the best and most typical examples of *unilateral contracts*." *Id.* at 603 (Cook, J., dissenting) (quoting *Wagner v. City of Globe*, 722 P.2d 250, 253 (Ariz. 1986)) (emphasis in original). A unilateral contract "results from an exchange of a promise for an act": *e.g.*, a promise of payment for performance of labor. *SouthTrust Bank v. Williams*, 775 So. 2d 184, 188 (Ala. 2000).

However, it is not enough to show that an at-will employment relationship is contractual, albeit unilaterally so, because the tort of intentional interference with a contractual relationship specifically requires that the underlying contract be *enforceable*. A "contract" for at-will employment is generally *unenforceable*, because such a contract is terminable at any time "by either party for a good reason, a bad reason, or no reason at all." *Hall v. Integon Life Insurance Co.*, 454 So. 2d 1338, 1344 (Ala. 1984). Accordingly, Alabama law does not recognize a claim for

---

[47] *See* doc. no. 12 (Motion to Dismiss), at 2–5.

breach of an at-will employment contract. *See, e.g., Ex parte Michelin North America, Inc.*, 795 So. 2d 674, 677–78 (Ala. 2001) (affirming summary judgment in favor of the defendant-employer on plaintiff's breach-of-contract claim because the parties' employment relationship was "at will").

Outside Alabama, many courts "view a right arising from an at-will contract as *an expectancy*, as opposed to *the property right* arising from a fixed-term contract." Orrin K. Ames III, *Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort*, 35 Cumberland L. Rev. 317, 334 (2005) (emphasis supplied). *See also, e.g., Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1052 (Ill. App. 1998) ("An action for tortious interference with a contract which is terminable at will . . . is classified as one for intentional interference with prospective economic advantage.") (ellipsis supplied).

The Alabama Supreme Court, however, has treated an at-will employment relationship as a property right. In *Hall v. Integon Life Insurance Co.*, 454 So. 2d 1338 (Ala. 1984), the Court held that a plaintiff's claim for tortious interference with a contractual relationship was not defeated by the fact that he was an at-will employee, because a "person's employment, trade, or calling is a property right, and wrongful interference therewith is actionable." *Id.* at 1344. The *Hall* opinion emphasized that "the fact that the employment is at the will of the employer and

employee does not make it one at the will of third parties." *Id.*[48]

*Hall*'s holding — that a plaintiff's property right in his at-will employment relationship is sufficiently "contractual" to state a claim for tortious interference with a contractual relationship — would appear to be abrogated by subsequent Alabama cases. The Alabama Supreme Court has since required a plaintiff to show a fixed-term, enforceable contract to state an actionable claim for intentional interference with a contractual relationship. *See, e.g.*, *White Sands Group, LLC v. PRS II, LLC*, 998 So. 2d 1042, 1054 (Ala. 2008) ("*White Sands I*"). At-will employment is neither fixed-term nor enforceable. Nevertheless, *Hall* has not been explicitly overruled. Consequently, plaintiff's at-will employment relationship is "contractual," and plaintiff's claim for intentional interference with a contractual relationship (Count V) will not be dismissed on the basis that his employment relationship was "at will."

Even so, that is not the end of discussion.

## B. Plaintiff Failed to Show that MetLife is "a Stranger" to His Employment Relationship

Plaintiff alleged that, "[a]t all relevant times, Metlife [*sic*] acted as FCA's [*FreightCar Alabama's*] FMLA third-party administrator/servicer for employees who sought FMLA protection or disability leave/accommodations." Doc. no. 1

---

[48] *See also Easaw v. Newport*, 253 F. Supp. 3d 22, 40 n.11 (D. D.C. 2017) (collecting cases that recognize tortious interference for at-will employment contracts).

14

(Complaint), ¶ 173 (alterations supplied).  *See also*, *e.g.*, *id.* ¶ 50 ("Ms. Creel told Brewer he had to contact their FMLA third-party administrator/servicer, Metlife."); *id.* ¶ 144 ("From January 2018 through February 1, 2019, Metlife was FCA's third-party administrator/servicer and it handles the disability claims and FMLA leave requests made by FCA's employees."); *id.* ¶ 182 ("As FCA's third party administrator, Metlife denied Brewer FMLA lease [*sic*], even though it was supported by medical certification, and as a result, Metlife's actions and inaction caused FCA to terminate Brewer's employment.").

The Alabama Supreme Court has consistently held that an agent of one of the parties to a contract is not a "stranger" to the relationship.  *See, e.g.*, *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 455–56 (Ala. 2004); *Parsons v. Aaron*, 849 So. 2d 932, 946–47 (Ala. 2002); *see also, e.g.*, *Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1585 (N.D. Ala. 1996) ("Neither a party to the contract nor an agent or employee of a party to the contract, if acting within the scope of authority, can be liable for tortious interference with the contract."); *DocRX Inc. v. Dox Consulting, LLC*, CA 10-0364-C, 2012 WL 13049365, at *24 (S.D. Ala. Oct. 31, 2012) ("[I]n order for a defendant to be liable for tortious interference with contractual relations, the defendant must be a stranger to both the contract *and* the business relationship giving rise to and underpinning the contract.") (quoting *Tom's Food, Inc.*, 896 So. 2d

at 454–55) (alteration supplied, emphasis in original).

The Alabama Supreme Court also has held that a plaintiff who alleges a claim for tortious interference with a contractual or business relationship bears the burden of proving that the defendant is a "stranger" to either the contract or business relationship, and created a test for determining when a defendant is *not* a "stranger." *Waddell & Reed, Inc. v. United Investors Life Insurance Co.*, 875 So. 2d 1143, 1154 (Ala. 2003).

> [A] defendant is not a "stranger" to a contract or business relationship when: (1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependant upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations.

*Id.* at 1156 (quoting *Britt/Paulk Insurance Agency, Inc. v. Vandroff Insurance Agency, Inc.*, 952 F. Supp. 1575, 1584 (N.D. Ga. 1996), *aff'd* 137 F.3d 1356 (11th Cir. 1998)) (alteration in original).

Plaintiff contends that MetLife *is* a "stranger," because "MetLife did not control [his] employment with [FreightCar Alabama] and it did not directly benefit from [his] at-will employment contract with [FreightCar Alabama]."[49] That argument is unavailing. MetLife was essential to plaintiff's "injured relations" because it

---

[49] Doc. no. 27 (Plaintiff's Response to Motion to Dismiss), at 14 (alterations supplied).

16

administered all requests for FMLA and short-term disability benefits submitted by employees of FreightCar Alabama; and, as plaintiff alleged, it also made the decisions to grant or deny those benefits. MetLife's involvement stems from the "interwoven" nature of FreightCar Alabama's employment of plaintiff, and MetLife's contract with FreightCar Alabama to evaluate claims for the FMLA and disability benefits offered by FreightCar Alabama. While MetLife was not a necessary party to plaintiff's employment relationship with FreightCar Alabama, it was chosen by FreightCar Alabama to be the agent to evaluate claims for, and to administer, any FMLA and ADA disability benefits to which an employee proved that he or she was entitled. That secondary contract is central to plaintiff's claims in this case.

The failure of that argument notwithstanding, plaintiff cites two opinions in which a court declined to dismiss a claim for intentional interference to bolster his contention that MetLife was a "stranger" to his employment relationship. The first is a case in which Judge R. David Proctor of this court declined to dismiss a claim of tortious interference on the basis that the plaintiff had not shown the defendant was a stranger to the relationship, because "the court would need to account for facts beyond what may be considered at the motion to dismiss stage." *Wiggins v. FDIC*, No. 2:12-cv-2705-SGC, 2016 WL 7230636, at *3 (N.D. Ala. Dec. 14, 2016). That ruling does not apply here, however, because there are no genuine issues of material

fact which remain to be established.  MetLife's relationship to the employment relationship between plaintiff and FreightCar Alabama is clear and undisputed.  As plaintiff alleged, MetLife "acted as [FreightCar Alabama's] third-party administrator/servicer for employees who sought FMLA protection or disability leave/accommodations."  Doc. no. 1 (Complaint), ¶ 173 (alteration supplied). Plaintiff's factual allegations also often describe FreightCar Alabama and MetLife taking actions in conjunction with one another.  *See, e.g.*, *id.* ¶ 54 ("FCA and Metlife [*sic*] denied Brewer's request for intermittent leave for all three conditions."); *id.* ¶ 63 ("Despite FCA and Metlife having notice of Brewer's needs for FMLA leave, they refused to offer any assistance."); *id.* ¶ 100 ("Nonetheless, FCA and Metlife denied his request again for FMLA and/or STD [*short-term disability*] leave.") (alterations supplied).  Thus, unlike the factual circumstances underlying Judge Proctor's opinion in *Wiggins*, *supra*, discovery is not needed in the present action in order to illuminate the interwoven nature of the relationships between plaintiff, FreightCar Alabama, and MetLife.

Plaintiff also cites a non-binding opinion from the United States District Court for the Northern District of Illinois in which that court allowed a tortious interference claim to proceed against a third-party administrator of FMLA benefits.  *See Arango v. Work & Well, Inc.*, 930 F. Supp. 2d 940, 944–46 (N.D. Ill. 2013).  Significantly,

however, that court was not evaluating whether the third-party administrator was a "stranger" to the employment relationship between the plaintiff and his employer, because the elements for the state-law tort under Illinois law did not require such an analysis. Instead, the court evaluated the administrator as a third-party consultant or advisor who, under Illinois law, was privileged "to offer good-faith advice to a client without fear of liability [for tortious interference] should the client act on that advice to the harm of a third-person," unless the consultant did not "give honest advice." *Id.* at 944 (alteration in original).

Alabama law carves out a similar exception for a party's agents or employees, who generally cannot be sued for tortious interference *unless* they "were acting outside their scope of employment and were acting with actual malice." *Hickman v. Winston County Hospital Board*, 508 So. 2d 237, 239 (Ala. 1987). Plaintiff would have to allege that MetLife was acting with actual malice *and* outside the scope of its contract with FreightCar Alabama in order for MetLife to be liable, but plaintiff has not made any such allegations. Accordingly, the opinion of the U.S. District Court for the Northern District of Illinois in the *Arango* case has no bearing on the present action.

For those reasons, the court finds that MetLife was not a "stranger" to the employment relationship between plaintiff and FreightCar Alabama. Therefore,

19

plaintiff has failed to state a *prima facie* case for either tort, and his claims against MetLife are due to be dismissed.

## IV.  CONCLUSION

In accordance with the foregoing, defendant MetLife's motion is due to be granted, and Counts IV and V of plaintiff's complaint dismissed with prejudice.  A separate Order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 13th day of April, 2021.

Senior United States District Judge

20